RACHELE R. BYRD (190634)
*byrd@whafh.com*
ALEX J. TRAMONTANO (276666)
*tramontano@whafh.com*
FERDEZA ZEKIRI (335507)
*zekiri@whafh.com*
**WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLP**
750 B Street, Suite 1820
San Diego, CA 92101
Telephone: (619) 239-4599
Facsimile:  (619) 234-4599

*Attorneys for Plaintiff and the Proposed Class*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| VICTORIA ROSAS, individually and on behalf of all others similarly situated, | Case No. _____ |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | DEMAND FOR JURY TRIAL |
| F21 OPCO LLC dba FOREVER 21, | |
| Defendant. | |

Plaintiff Victoria Rosas ("Plaintiff"), in her individual capacity and on behalf of all others similarly situated, brings this Class Action Complaint against F21 OPCO LLC dba Forever 21 ("Defendant") and alleges, upon personal knowledge as to her own actions and her counsels' investigations, and upon information and belief as to all other matters, as follows:

## I. **INTRODUCTION**

1.  Plaintiff brings this class action against Defendant for its failure to properly secure and safeguard Personally Identifiable Information ("PII") and Protected Health Information ("PHI") of approximately 539,207 current and former employees including, without limitation, their names, Social Security numbers, dates of birth, bank account numbers, and information regarding employee health plans including enrollment information and premiums paid.[1]

2.  Plaintiff also alleges Defendant failed to provide timely, accurate, and adequate notice to Plaintiff and similarly situated current and former employees ("Class Members") that their PII and PHI had been lost and precisely what type of information was unencrypted and is now in the possession of unknown third parties.

3.  Defendant is a clothing and accessories retailer that operates 540 outlets worldwide and employs roughly 43,000 people.[2] Defendant's employees entrust it with an extensive amount of their PII and PHI. Defendant retains this information—even after the employment relationship ends.

4.  On or around March 20, 2023, Defendant "identified a cyber incident

---

[1]    https://apps.web.maine.gov/online/aeviewer/ME/40/dfe496ce-bd38-477c-912a-26bd54798369.shtml (last visited September 18, 2023).
[2]    *See*  https://www.bleepingcomputer.com/news/security/forever-21-data-breach-hackers-accessed-info-of-500-000/ (last visited September 18, 2023).

that impacted a limited number of systems."[3] Defendant launched an investigation which revealed that "an unauthorized third party accessed certain Forever 21 systems at various times between January 5, 2023 and March 21, 2023."[4] Furthermore, the "[f]indings from [an] investigation indicate[d] the unauthorized third party obtained select files from certain Forever 21 systems during this time period" (the "Data Breach").[5]

5.    More than five months later, Defendant issued a notice of the Data Breach, dated August 29, 2023, to those whose PII may have been impacted.[6]

6.    By obtaining, collecting, using, and deriving a benefit from the PII and PHI of Plaintiff and Class Members, Defendant assumed legal and equitable duties to those individuals to protect and safeguard that information from unauthorized access and intrusion. Defendant admits that the unencrypted PII and PHI that the attacker viewed and took included individuals' names, Social Security numbers, dates of birth, bank account numbers, and information regarding employee health plans including enrollment information and premiums paid.[7]

7.    Hackers can access and then offer for sale the unencrypted, unredacted PII and PHI to criminals. The exposed PII and PHI of Plaintiff and Class Members

---

[3]https://oag.ca.gov/system/files/1Y%20F21%20Master%20Individual%20Notification%20Letter.pdf (last visited September 18, 2023).

[4] *Id.*

[5] *Id.*

[6] *Id.*

[7] *Id.* It is clear that the information exposed in the Data Breach was unencrypted. California law requires companies to notify California residents "whose **unencrypted** personal information was, or is reasonably believed to have been, acquired by an unauthorized person" due to a "breach of the security of the system[.]" Cal. Civ. Code § 1798.82(a)(1) (emphasis added). Defendant notified the California Attorney General of the Data Breach on August 29, 2023, evidencing that the exposed data was unencrypted.

can be sold on the dark web. Plaintiff and Class Members now face a present and lifetime risk of identity theft, which is heightened here by the loss of their Social Security numbers.

8.   This PII and PHI was compromised due to Defendant's negligent and/or careless acts and omissions and the failure to protect the PII and PHI of Plaintiff and Class Members. In addition to Defendant's failure to prevent the Data Breach, after discovering the breach, Defendant waited more than five months to report it to the states' Attorneys General and affected individuals. Defendant has not informed Plaintiff or Class Members what the specific vulnerabilities and root causes of the breach are.

9.   As a result of this delayed response, Plaintiff and Class Members had no idea their PII and PHI had been compromised, and that they were, and continue to be, at significant risk of identity theft and various other forms of personal, social, and financial harm. The risk will remain for their respective lifetimes.

10.   Plaintiff brings this action on behalf of all persons whose PII and PHI was compromised as a result of Defendant's failure to: (i) adequately protect the PII and PHI of Plaintiff and Class Members; (ii) warn Plaintiff and Class Members of Defendant's inadequate information security practices; and (iii) effectively secure hardware containing protected PII and PHI using reasonable and effective security procedures free of vulnerabilities and incidents. Defendant's conduct amounts to negligence and violates federal and state statutes.

11.   Plaintiff and Class Members have suffered injury as a result of Defendant's conduct. These injuries include: (i) lost or diminished value of PII and PHI; (ii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII and PHI; (iii) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time; and (iv) the

continued and certainly increased risk to their PII and PHI, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) may remain backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII and PHI.

12.    Defendant disregarded the rights of Plaintiff and Class Members by intentionally, willfully, recklessly, or negligently failing to implement and maintain adequate and reasonable measures to ensure that the PII and PHI of Plaintiff and Class Members was safeguarded, failing to take available steps to prevent an unauthorized disclosure of data, and failing to follow applicable, required, and appropriate protocols, policies, and procedures regarding the encryption of data, even for internal use. As a result, the PII and PHI of Plaintiff and Class Members was compromised through disclosure to an unknown and unauthorized third party. Plaintiff and Class Members have a continuing interest in ensuring that their information is and remains safe, and they are entitled to injunctive and other equitable relief.

## II.    PARTIES

13.    Plaintiff Victoria Rosas is a resident and citizen of East Stroudsburg, Pennsylvania. Plaintiff Rosas is acting on her own behalf and on behalf of others similarly situated. Defendant obtained and continues to maintain Plaintiff Rosas' PII and PHI and has a legal duty and obligation to protect that PII and PHI from unauthorized access and disclosure. Plaintiff Rosas would not have entrusted her PII and PHI to Defendant, her former employer, had she known that it would fail to maintain adequate data security. Plaintiff Rosas' PII and PHI was compromised and disclosed as a result of the Data Breach.

14.    Defendant F21 OPCO LLC dba Forever 21, is a Delaware corporation with its headquarters located at 110 E. 9th Street, Suite C910, Los Angeles,

California 90079.

15. All of Plaintiff's claims stated herein are asserted against Defendant and any of its owners, predecessors, successors, subsidiaries, agents and/or assigns.

## III.  JURISDICTION AND VENUE

16. This Court has subject matter and diversity jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action wherein the amount of controversy exceeds the sum or value of $5 million, exclusive of interest and costs, there are more than 100 members in the proposed Class, and at least one Class Member is a citizen of a state different from Defendant to establish minimal diversity.

17. This court has personal jurisdiction over Defendant named in this action because Defendant is headquartered in this District and conducts substantial business in this District.

18. Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant is headquartered in this District and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## IV.  FACTUAL ALLEGATIONS

*Background*

19. Defendant is a growing clothing and accessories retailer with more than 540 locations globally and online.[8] Defendant currently employs roughly 43,000 people.[9]

20. Plaintiff and Class Members employed by Defendant were required to provide Defendant with sensitive and confidential information, including their

---

[8] *See* https://www.forever21.com/us/aboutus/aboutus.html (last visited September 18, 2023).

[9] *See supra*, n.2.

names, Social Security numbers, dates of birth, bank account numbers and other PII and PHI, which is static, does not change, and can be used to commit countless different types of financial crimes.

21.    Plaintiff and Class Members, as current and former employees of Defendant, relied on the sophistication of Defendant to keep their PII and PHI confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information. Plaintiff and Class Members demand security to safeguard their PII and PHI.

22.    Defendant had a duty to adopt reasonable measures to protect the PII and PHI of Plaintiff and Class Members from involuntary disclosure to third parties.

***The Data Breach***

23.    Beginning on or about August 29, 2023, Defendant sent Plaintiff and other current and former employees an untitled Data Breach notice. Defendant informed the recipients of the notice that:

> **What Happened?** On March 20, 2023, Forever 21 identified a cyber incident that impacted a limited number of systems. Once the incident was discovered, Forever 21 immediately launched an investigation, and leading cybersecurity firms were engaged to assist. We also notified law enforcement and continued to support their investigation.
>
> The investigation revealed that an unauthorized third party accessed certain Forever 21 systems at various times between January 5, 2023 and March 21, 2023. Findings from the investigation indicate the unauthorized third party obtained select files from certain Forever 21 systems during this time period. We have no evidence to suggest your information has been misused for purposes of fraud or identity theft as

a result of this incident – and no reason to believe that it will be. Forever 21 has taken steps to help assure that the unauthorized third party no longer has access to the data. In addition, Forever 21 has no indication that the unauthorized third party further copied, retained, or shared any of the data. As a result, we believe the risk to individuals whose personal data was involved in this event is low. Nonetheless, a robust review of the files involved was conducted to identify individuals whose personal information may be contained in the files.

**What Information Was Involved?** This month, our investigation determined that the files involved contained some of your personal information, such as your name, Social Security number, date of birth, bank account number (without access code or pin), and information regarding your Forever21 health plan, including enrollment and premiums paid.[10]

24.    On or about August 29, 2023, Defendant sent data breach notifications to various state Attorneys General, including Maine's Attorney General, signed by Will Daugherty of Norton Rose Fulbright US LLP as counsel for Defendant.[11]

25.    The details of the root cause of the Data Breach, the vulnerabilities exploited, and the remedial measures undertaken to ensure such a breach does not occur again have not been shared with regulators or Plaintiff and Class Members, who retain a vested interest in ensuring that their PII and PHI remains protected.[12]

26.    The unencrypted PII and PHI of Plaintiff and Class Members may end

---

[10] *See supra*, n.3.
[11] *See supra*, n.1.
[12] *Id.*

up for sale on the dark web, or simply fall into the hands of companies that will use the detailed PII and PHI for targeted marketing without the approval of Plaintiff and Class Members. Unauthorized individuals can easily access the PII and PHI of Plaintiff and Class Members.

27.    Defendant did not use reasonable security procedures and practices appropriate to the nature of the sensitive information it was maintaining for Plaintiff and Class Members, such as encrypting the information or deleting it when it is no longer needed, causing the exposure of PII and PHI for many current and former employees.

28.    As explained by the Federal Bureau of Investigation, "[p]revention is the most effective defense against ransomware and it is critical to take precautions for protection."[13]

29.    To prevent and detect cyber-attacks and/or ransomware attacks Defendant could and should have implemented, as recommended by the United States Government, the following measures:

- Implement an awareness and training program. Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered.
- Enable strong spam filters to prevent phishing emails from reaching the end users and authenticate inbound email using technologies like Sender Policy Framework (SPF), Domain Message Authentication Reporting and Conformance (DMARC), and DomainKeys Identified Mail (DKIM) to prevent email spoofing.
- Scan all incoming and outgoing emails to detect threats and filter

---

[13] *See* How to Protect Your Networks from RANSOMWARE, at 3, *available at:* https://www.fbi.gov/file-repository/ransomware-prevention-and-response-for-cisos.pdf/view (last visited September 18, 2023).

executable files from reaching end users.

- Configure firewalls to block access to known malicious IP addresses.

- Patch operating systems, software, and firmware on devices. Consider using a centralized patch management system.

- Set anti-virus and anti-malware programs to conduct regular scans automatically.

- Manage the use of privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary.

- Configure access controls—including file, directory, and network share permissions—with least privilege in mind. If a user only needs to read specific files, the user should not have write access to those files, directories, or shares.

- Disable macro scripts from office files transmitted via email. Consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications.

- Implement Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.

- Consider disabling Remote Desktop protocol (RDP) if it is not being used.

- Use application whitelisting, which only allows systems to execute programs known and permitted by security policy.

- Execute operating system environments or specific programs in a virtualized environment.

- Categorize data based on organizational value and implement physical

and logical separation of networks and data for different organizational units.[14]

30.    To prevent and detect cyber-attacks Defendant could and should have implemented, as recommended by the United States Cybersecurity & Infrastructure Security Agency, the following measures:

- **Update and patch your computer**. Ensure your applications and operating systems (OSs) have been updated with the latest patches. Vulnerable applications and OSs are the target of most ransomware attacks….

- **Use caution with links and when entering website addresses**. Be careful when clicking directly on links in emails, even if the sender appears to be someone you know. Attempt to independently verify website addresses (e.g., contact your organization's helpdesk, search the internet for the sender organization's website or the topic mentioned in the email). Pay attention to the website addresses you click on, as well as those you enter yourself. Malicious website addresses often appear almost identical to legitimate sites, often using a slight variation in spelling or a different domain (e.g., .com instead of .net)….

- **Open email attachments with caution**. Be wary of opening email attachments, even from senders you think you know, particularly when attachments are compressed files or ZIP files.

- **Keep your personal information safe**. Check a website's security to ensure the information you submit is encrypted before you provide it….

- **Verify email senders**. If you are unsure whether or not an email is legitimate, try to verify the email's legitimacy by contacting the sender

---

[14] *See id*. at 3-4.

directly. Do not click on any links in the email. If possible, use a previous (legitimate) email to ensure the contact information you have for the sender is authentic before you contact them.

- **Inform yourself**. Keep yourself informed about recent cybersecurity threats and up to date on ransomware techniques. You can find information about known phishing attacks on the Anti-Phishing Working Group website. You may also want to sign up for CISA product notifications, which will alert you when a new Alert, Analysis Report, Bulletin, Current Activity, or Tip has been published.

- **Use and maintain preventative software programs**. Install antivirus software, firewalls, and email filters—and keep them updated—to reduce malicious network traffic....[15]

31.    To prevent and detect cyber-attacks or ransomware attacks Defendant could and should have implemented, as recommended by the Microsoft Threat Protection Intelligence Team, the following measures:

- Harden internet-facing assets and ensure they have the latest security updates. Use threat and vulnerability management to audit these assets regularly for vulnerabilities, misconfigurations, and suspicious activity.

- Secure Remote Desktop Gateway using solutions like Azure Multi-Factor Authentication (MFA). If you don't have an MFA gateway,

---

[15] *See* Cybersecurity & Infrastructure Security Agency, *Protecting Against Ransomware* (original release date Apr. 11, 2019), *available at:* https://www.cisa.gov/news-events/news/protecting-against-ransomware (last visited September 18, 2023).

enable network-level authentication (NLA).

- Practice the principle of least-privilege and maintain credential hygiene. Avoid the use of domain-wide, admin-level service accounts. Enforce strong randomized, just-in-time local administrator passwords. Use tools like LAPS.

- Monitor for brute-force attempts. Check excessive failed authentication attempts (Windows security event ID 4625).

- Monitor for clearing of Event Logs, especially the Security Event log and PowerShell Operational logs. Microsoft Defender ATP raises the alert "Event log was cleared" and Windows generates an Event ID 1102 when this occurs.

- Turn on tamper protection features to prevent attackers from stopping security services.

- Determine where highly privileged accounts are logging on and exposing credentials. Monitor and investigate logon events (event ID 4624) for logon type attributes. Domain admin accounts and other accounts with high privilege should not be present on workstations.

- Turn on cloud-delivered protection and automatic sample submission on Windows Defender Antivirus. These capabilities use artificial intelligence and machine learning to quickly identify and stop new and unknown threats.

- Turn on attack surface reduction rules, including rules that block credential theft, ransomware activity, and suspicious use of PsExec and WMI. To address malicious activity initiated through weaponized Office documents, use rules that block advanced macro activity, executable content, process creation, and process injection

initiated by Office applications. To assess the impact of these rules, deploy them in audit mode.

- Turn on AMSI for Office VBA if you have Office 365.
- Utilize the Windows Defender Firewall and your network firewall to prevent RPC and SMB communication among endpoints whenever possible. This limits lateral movement as well as other attack activities.[16]

32.    Given that Defendant was storing the PII of its current and former employees, Defendant could and should have implemented all of the above measures to prevent and detect ransomware attacks.

33.    The occurrence of the Data Breach indicates that Defendant failed to adequately implement one or more of the above measures to prevent ransomware attacks, resulting in the Data Breach and the exposure of the PII and PHI of an undisclosed amount of current and former employees, including Plaintiff and Class Members

***Defendant Acquires, Collects, and Stores the PII and PHI of Plaintiff and Class Members.***

34.    Defendant has historically acquired, collected, and stored the PII and PHI of Plaintiff and Class Members.

35.    As a condition of maintaining employment with Defendant, Defendant requires that its employees entrust it with highly confidential PII and PHI.

36.    By obtaining, collecting, and storing the PII and PHI of Plaintiff and

---

[16] *See* Microsoft, *Human-operated ransomware attacks: A preventable disaster* (Mar 5, 2020), *available at:* https://www.microsoft.com/security/blog/2020/03/05/human-operated-ransomware-attacks-a-preventable-disaster/ (last visited September 18, 2023).

Class Members, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting the PII and PHI from disclosure.

37.   Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their PII and PHI and relied on Defendant to keep their PII and PHI confidential and maintained securely, to use this information for business purposes only, and to make only authorized disclosures of this information.

***Securing PII and Preventing Breaches***

38.   Defendant could have prevented this Data Breach by properly securing and encrypting the files and file servers containing the PII and PHI of Plaintiff and Class Members. Alternatively, Defendant could have destroyed the data, especially data from former employees.

39.   Defendant's policies on its website include promises and legal obligations to maintain and protect PII and PHI, demonstrating an understanding of the importance of securing PII and PHI. For example, Defendant's Privacy Policy provides in part that it cares "about the security of your personal information and employ[s] commercially reasonable physical, administrative, and technological safeguards designed to preserve the integrity and security of all information collected through our Services."[17]

40.   Defendant's negligence in safeguarding the PII and PHI of Plaintiff and Class Members is exacerbated by the repeated warnings and alerts directed to protecting and securing sensitive data.

41.   Despite the prevalence of public announcements of data breach and data security compromises, Defendant failed to take appropriate steps to protect the PII and PHI of Plaintiff and Class Members from being compromised.

---

[17] *See* https://www.forever21.com/us/privacypolicy.html (last visited September 18, 2023).

*Value of Personally Identifiable Information*

42.    The Federal Trade Commission ("FTC") defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[18] The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."[19]

43.    The PII of individuals remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, Personal Information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[20] Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web.[21] Criminals can also purchase access to entire company data breaches from $900 to $4,500.[22]

44.    Social Security numbers, for example, are among the worst kind of PII

---

[18] 17 C.F.R. § 248.201 (2013).

[19] *Id.*

[20] Digital Trends, *Your personal data is for sale on the dark web. Here's how much it costs*, Oct. 16, 2019, *available at*: https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last visited September 18, 2023).

[21] Experian, *Here's How Much Your Personal Information Is Selling for on the Dark Web*, Dec. 6, 2017, *available at*: https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (last visited September 18, 2023).

[22] VPN Overview, *In the Dark*, 2019, *available at*: https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/ (last visited September 18, 2023).

-15-

to have stolen because they may be put to a variety of fraudulent uses and are difficult for an individual to change. The Social Security Administration stresses that the loss of an individual's Social Security number, as is the case here, can lead to identity theft and extensive financial fraud:

> . . . A dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought.

> Someone illegally using your Social Security number and assuming your identity can cause a lot of problems.[23]

45.    What is more, it is no easy task to change or cancel a stolen Social Security number. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. In other words, preventive action to defend against the possibility of misuse of a Social Security number is not permitted; an individual must show evidence of actual, ongoing fraud activity to obtain a new number.

46.    Even then, a new Social Security number may not be effective.

---

[23] Social Security Administration, *Identity Theft and Your Social Security Number* at 1, *available at*: https://www.ssa.gov/pubs/EN-05-10064.pdf (last visited September 6, 2023).

According to Julie Ferguson of the Identity Theft Resource Center, "[t]he credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[24]

47.    Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach because, there, victims can cancel or close credit and debit card accounts. The information compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change: Social Security number, driver's license number, name, and date of birth.

48.    This data demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information, personally identifiable information and Social Security numbers are worth more than 10x on the black market."[25]

49.    Among other forms of fraud, identity thieves may obtain driver's licenses, government benefits, medical services, and housing or even give false information to police.

---

[24] Bryan Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015), *available at*: https://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millions-worrying-about-identity-theft#:~:text=%22The%20credit%20bureaus%20and%20banks,the%20victim%20of%20identity%20theft.%22 (last visited September 18, 2023).

[25] Tim Greene, *Anthem hack: Personal data stolen sells for 10x price of stolen credit card numbers*, Networkworld, (Feb. 6, 2015), *available at*: https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html (last visited September 18, 2023).

50.    The fraudulent activity resulting from the Data Breach may not come to light for years.

51.    There may be a time lag between when harm occurs versus when it is discovered, and also between when PII is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

. . . [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[26]

52.    Theft of PHI is also gravely serious: A thief may use names or health insurance numbers to see a doctor, get prescription drugs, file claims with a victim's insurance provider, or get other care. If the thief's health information is mixed with the victim's, the victim's treatment, insurance and payment records, and credit report may be affected.

53.    Drug manufacturers, medical device manufacturers, pharmacies, hospitals and other healthcare service providers often purchase PII and PHI on the black market for the purpose of target marketing their products and services to the physical maladies of the data breach victims themselves. Insurance companies purchase and use wrongfully disclosed PHI to adjust their insureds' medical

---

[26] GAO, *Report to Congressional Requesters*, at 29 (June 2007), *available at:* https://www.gao.gov/assets/gao-07-737.pdf (last visited September 18, 2023).

insurance premiums.

54.    According to account monitoring company LogDog, medical data sells for $50 and up on the Dark Web.[27]

55.    The PII and PHI stolen in the Data Breach have significant value, as PII and PHI is a valuable property right.[28] Sensitive PII can sell for as much as $363 per record according to the Infosec Institute.[29]

56.    There is also an active and robust legitimate marketplace for PII. In 2019, the data brokering industry was worth roughly $200 billion.[30] In fact, the data marketplace is so sophisticated that consumers can sell their non-public information directly to a data broker, who in turn aggregates the information and provides it to marketers or app developers.[31] Consumers who agree to provide their web browsing history to the Nielsen Corporation can receive up to $60.00 a year.[32]

57.    As a result of the Data Breach, Plaintiff's and Class Members' PII and

---

[27] Lisa Vaas, *Ransomware attacks paralyze, and sometimes crush, hospitals*, Naked Security (Oct. 3, 2019), https://nakedsecurity.sophos.com/2019/10/03/ransomware-attacks-paralyze-and-sometimes-crush-hospitals/ (last visited September 18, 2023).

[28] *See, e.g.*, John T. Soma, et al, *Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets*, 15 RICH. J.L. & TECH. 11, at *3–4 (2009) ("PII, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets.") (citations omitted).

[29] *See* Ashiq Ja, *Hackers Selling Healthcare Data in the Black Market*, INFOSEC (July 27, 2015), https://resources.infosecinstitute.com/topic/hackers-selling-healthcare-data-in-the-black-market/ (last visited September 18, 2023).

[30] David Lazarus, *Column: Shadowy Data Brokers Make the Most of Their Invisibility Cloak* (Nov. 5, 2019), https://www.latimes.com/business/story/2019-11-05/column-data-brokers (last visited September 18, 2023).

[31] *See, e.g.*, https://datacoup.com/ (last visited September 18, 2023); https://worlddataexchange.com/about (last visited September 18, 2023).

[32] Nielsen, *Computer & Mobile Panel*, *available at* https://computermobilepanel.nielsen.com/ui/US/en/sdp/landing (last visited September 18, 2023).

PHI, which has an inherent market value in both legitimate and black markets, has been damaged and diminished by its unauthorized release to third party actors, to whom it holds significant value. However, this transfer of value occurred without any consideration paid to Plaintiff or Class Members for their property, resulting in an economic loss. Moreover, the PII and PHI are now readily available, and the rarity of Plaintiff's and Class Members' PII and PHI has been lost, thereby causing additional loss of value.

58.    At all relevant times, Defendant knew, or reasonably should have known, of the importance of safeguarding the PII and PHI of Plaintiff and Class Members, including Social Security numbers and dates of birth, and of the foreseeable consequences that would occur if Defendant's data security system was breached, including, specifically, the significant costs that would be imposed on Plaintiff and Class Members as a result of a breach.

59.    Plaintiff and Class Members now face a lifetime of constant surveillance of their financial and personal records, monitoring, and loss of rights. The Class is incurring and will continue to incur such damages in addition to any fraudulent use of their PII and PHI.

60.    Defendant was, or should have been, fully aware of the unique type and the significant volume of data on Defendant's servers, amounting to potentially thousands of individuals' detailed PII and PHI and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

61.    In the breach notification letter, Defendant made an offer of 12 months of identity monitoring services. This is wholly inadequate to compensate Plaintiff and Class Members as it fails to provide for the fact that victims of data breaches and other unauthorized disclosures commonly face multiple years of ongoing identity theft, medical and financial fraud, and it entirely fails to provide sufficient compensation for the unauthorized release and disclosure of Plaintiff's and Class

Members' PII and PHI.

62.     The injuries to Plaintiff and Class Members were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for the PII and PHI of Plaintiff and Class Members.

63.     The ramifications of Defendant's failure to keep secure the PII and PHI of Plaintiff and Class Members are long lasting and severe. Once PII and PHI is stolen, particularly Social Security numbers, fraudulent use of that information and damage to victims may continue for years.

***Plaintiff Victoria Rosas' Experience***

64.     Plaintiff Victoria Rosas ("Plaintiff Rosas") provided her PII to Defendant directly in order to obtain employment.

65.     Plaintiff Rosas is very careful about sharing her sensitive Private Information. Plaintiff Rosas has never knowingly transmitted unencrypted sensitive PII or PHI over the internet or any other unsecured source.

66.     Plaintiff Rosas first learned of the Data Breach after receiving a data breach notification letter dated August 29, 2023 from Defendant, notifying her that Defendant suffered a data breach roughly five months prior and that her PII and PHI had been improperly accessed and/or obtained by unauthorized third parties while in possession of Defendant.

67.     The notice of Data Breach letter indicated that the PII and PHI involved in the Data Breach may have included Plaintiff Rosas' name, Social Security number, date of birth, bank account number, and information regarding her employee health plan including enrollment and premiums paid.

68.     As a result of the Data Breach, Plaintiff Rosas made reasonable efforts to mitigate the impact of the Data Breach after receiving the Data Breach notification letter, including but not limited to researching the Data Breach, reviewing credit reports, financial account statements, and/or medical records for any indications of

actual or attempted identity theft or fraud, and placing a credit freeze on her credit history.

69.     Plaintiff Rosas has spent multiple hours mitigating the impact of the Data Breach and will continue to spend valuable time for the remainder of her life, time that she otherwise would have spent on other activities, including but not limited to work and/or recreation.

70.     Plaintiff Rosas suffered actual injury from having her PII and PHI compromised as a result of the Data Breach including, but not limited to (a) damage to and diminution in the value of her PII, a form of property that Defendant maintained belonging to Plaintiff Rosas; (b) violation of her privacy rights; (c) the theft of her PII and PHI; and (d) present, imminent and impending injury arising from the increased risk of identity theft and fraud. In fact, because her Social Security number is impacted, Plaintiff Rosas faces this risk for her lifetime.

71.     As a result of the Data Breach, Plaintiff Rosas has also suffered emotional distress as a result of the release of her PII and PHI, which she believed would be protected from unauthorized access and disclosure, including anxiety about unauthorized parties viewing, selling, and/or using her PII for purposes of identity theft and fraud. Plaintiff Rosas is very concerned about identity theft and fraud, as well as the consequences of such identity theft and fraud resulting from the Data Breach.

72.     As a result of the Data Breach, Plaintiff Rosas anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harm caused by the Data Breach. In addition, Plaintiff Rosas will continue to be at present, imminent, and continued increased risk of identity theft and fraud for the remainder of her life.

## V.    CLASS ALLEGATIONS

73.     Plaintiff brings this nationwide class action on behalf of herself and on

behalf of all others similarly situated pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure, for the following class:

**All individuals residing in the United States whose PII and PHI was compromised in the data breach first announced by Defendant on or about August 29, 2023 (the "Class").**

74.     Excluded from the Class are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

75.     Plaintiff reserves the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

76.     <u>Numerosity</u>, Fed. R. Civ. P. 23(a)(1): The Class is so numerous that joinder of all members is impracticable. The Class is apparently identifiable within Defendant's records.

77.     <u>Commonality</u>, Fed. R. Civ. P. 23(a)(2) and (b)(3): Questions of law and fact common to the Class exist and predominate over any questions affecting only individual Class Members. These include:

   a. Whether and to what extent Defendant had a duty to protect the PII and PHI of Plaintiff and Class Members;

   b. Whether Defendant had a duty not to disclose the PII and PHI of Plaintiff and Class Members to unauthorized third parties;

   c. Whether Defendant had a duty not to use the PII an PHI of Plaintiff and Class Members for non-business purposes;

   d. Whether Defendant failed to adequately safeguard the PII and PHI of Plaintiff and Class Members;

e.  Whether and when Defendant actually learned of the Data Breach;

f.  Whether Defendant adequately, promptly, and accurately informed Plaintiff and Class Members that their PII and PHI had been compromised;

g.  Whether Defendant violated the law by failing to promptly notify Plaintiff and Class Members that their PII and PHI had been compromised;

h.  Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

i.  Whether Defendant adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

j.  Whether Defendant engaged in unfair, unlawful, or deceptive practices by failing to safeguard the PII and PHI of Plaintiff and Class Members;

k.  Whether Plaintiff and Class Members are entitled to actual damages, statutory damages, and/or nominal damages as a result of Defendant's wrongful conduct;

l.  Whether Plaintiff and Class Members are entitled to restitution as a result of Defendant's wrongful conduct; and

m.  Whether Plaintiff and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach.

78.  Typicality, Fed. R. Civ. P. 23(a)(3): Plaintiff's claims are typical of those of other Class Members because she had her PII and PHI compromised as a result of the Data Breach due to Defendant's misfeasance.

79.  Policies Generally Applicable to the Class: This class action is also appropriate for certification because Defendant acted or refused to act on grounds

generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's policies challenged herein apply to and affect Class Members uniformly and Plaintiff's challenge of these policies hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

80.    Adequacy, Fed. R. Civ. P. 23(a)(4): Plaintiff will fairly and adequately represent and protect the interests of the Class Members in that she has no disabling conflicts of interest that would be antagonistic to those of the other Members of the Class. Plaintiff seeks no relief that is antagonistic or adverse to the Members of the Class and the infringement of the rights and the damages she has suffered are typical of other Class Members. Plaintiff has retained counsel experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously.

81.    Superiority and Manageability, Fed. R. Civ. P. 23(b)(3): The class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against a large corporation like Defendant. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

82.    The nature of this action and the nature of laws available to Plaintiff and Class Members make the use of the class action device a particularly efficient and

appropriate procedure to afford relief to Plaintiff and Class Members for the wrongs alleged because Defendant would necessarily gain an unconscionable advantage since it would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff was exposed is representative of that experienced by the Class and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

83.     The litigation of the claims brought herein is manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrates that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

84.     Adequate notice can be given to Class Members directly using information maintained in Defendant's records.

85.     Unless a class-wide injunction is issued, Defendant may continue in its failure to properly secure the PII and PHI of Class Members, Defendant may continue to refuse to provide proper notification to Class Members regarding the Data Breach, and Defendant may continue to act unlawfully as set forth in this Complaint.

86.     Further, Defendant has acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class Members as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

87.     Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the

resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

    a. Whether Defendant owed a legal duty to Plaintiff and Class Members to exercise due care in collecting, storing, using, and safeguarding their PII and PHI;

    b. Whether Defendant breached a legal duty to Plaintiff and Class Members to exercise due care in collecting, storing, using, and safeguarding their PII and PHI;

    c. Whether Defendant failed to comply with its own policies and applicable laws, regulations, and industry standards relating to data security;

    d. Whether an implied contract existed between Defendant on the one hand, and Plaintiff and Class Members on the other, and the terms of that implied contract;

    e. Whether Defendant breached the implied contract;

    f. Whether Defendant adequately and accurately informed Plaintiff and Class Members that their PII and PHI had been compromised;

    g. Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

    h. Whether Defendant engaged in unfair, unlawful, or deceptive practices by failing to safeguard the PII and PHI of Plaintiff and Class Members; and,

    i. Whether Class Members are entitled to actual damages, statutory damages, nominal damages, and/or injunctive relief as a result of Defendant's wrongful conduct.

## COUNT I
### NEGLIGENCE
**(On Behalf of Plaintiff and the Class)**

88.    Plaintiff and the Class re-allege and incorporate by reference herein all of the foregoing allegations as though fully set forth herein.

89.    As a condition of their employment with Defendant, Defendant's current and former employees were obligated to provide Defendant with PII, among other sensitive PII, their names, Social Security numbers, dates of birth, and bank account numbers. Defendant also retained sensitive PHI for each of the Class Members including but not limited to employee health plan information including enrollment and premiums paid.

90.    Plaintiff and the Class entrusted their PII and PHI to Defendant on the premise and with the understanding that Defendant would safeguard their information, use their PII and PHI for business purposes only, and/or not disclose their PII or PHI to unauthorized third parties.

91.    Defendant has full knowledge of the sensitivity of the PII and PHI and the types of harm that Plaintiff and the Class could and would suffer if the PII and PHI were wrongfully disclosed.

92.    Defendant knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of the PII and PHI of Plaintiff and the Class involved an unreasonable risk of harm to Plaintiff and the Class, even if the harm occurred through the criminal acts of a third party.

93.    Defendant had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. This duty includes, among other things, designing, maintaining, and testing Defendant's security protocols to ensure that the PII and PHI of Plaintiff and the Class in Defendant's possession was

adequately secured and protected.

94.    Defendant also had a duty to exercise appropriate clearinghouse practices to remove former employees' PII and PHI that Defendant was no longer required to retain pursuant to regulations.

95.    Defendant also had a duty to have procedures in place to detect and prevent the improper access and misuse of the PII and PHI of Plaintiff and the Class.

96.    Defendant's duty to use reasonable security measures arose as a result of the special relationship that existed between Defendant and Plaintiff and the Class. That special relationship arose because Plaintiff and the Class entrusted Defendant with their confidential PII and PHI, a necessary part of employment with Defendant.

97.    Defendant was subject to an "independent duty," untethered to any contract between Defendant and Plaintiff or the Class.

98.    A breach of security, unauthorized access, and resulting injury to Plaintiff and the Class was reasonably foreseeable, particularly in light of Defendant's inadequate security practices.

99.    Plaintiff and the Class were the foreseeable and probable victims of any inadequate security practices and procedures. Defendant knew or should have known of the inherent risks in collecting and storing the PII and PHI of Plaintiff and the Class, the critical importance of providing adequate security of that PII and PHI, and the necessity for encrypting or redacting PII and PHI stored on Defendant's systems.

100.    Defendant's own conduct created a foreseeable risk of harm to Plaintiff and the Class. Defendant's misconduct included, but was not limited to, its failure to take the steps and opportunities to prevent the Data Breach as set forth herein. Defendant's misconduct also included its decisions to not comply with industry standards for the safekeeping of the PII and PHI of Plaintiff and the Class, including

basic encryption techniques freely available to Defendant.

101.   Plaintiff and the Class had no ability to protect their PII and PHI that was in, and possibly remains in, Defendant's possession.

102.   Defendant was in a position to protect against the harm suffered by Plaintiff and the Class as a result of the Data Breach.

103.   Defendant had and continues to have a duty to adequately disclose that the PII and PHI of Plaintiff and the Class within Defendant's possession might have been compromised, how it was compromised, precisely the types of data that were compromised, and when they were compromised.

104.   Such notice was necessary to allow Plaintiff and the Class to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their PII and PHI by third parties.

105.   Defendant had a duty to employ proper procedures to prevent the unauthorized dissemination of the PII and PHI of Plaintiff and the Class.

106.   Defendant has admitted that the PII and PHI of Plaintiff and the Class was wrongfully lost and disclosed to unauthorized third persons as a result of the Data Breach.

107.   Defendant, through its actions and/or omissions, unlawfully breached its duties to Plaintiff and the Class by failing to implement industry protocols and exercise reasonable care in protecting and safeguarding the PII and PHI of Plaintiff and the Class during the time the PII and PHI was within Defendant's possession or control.

108.   Defendant improperly and inadequately safeguarded the PII and PHI of Plaintiff and the Class in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

109.   Defendant failed to heed industry warnings and alerts to provide adequate safeguards to protect the PII and PHI of Plaintiff and the Class in the face

of increased risk of theft.

110. Defendant, through its actions and/or omissions, unlawfully breached its duty to Plaintiff and the Class by failing to have appropriate procedures in place to detect and prevent dissemination of its current and former employees' PII and PHI.

111. Defendant, through its actions and/or omissions, unlawfully breached its duty to adequately and timely disclose to Plaintiff and the Class the existence and scope of the Data Breach.

112. But for Defendant's wrongful and negligent breach of duties owed to Plaintiff and the Class, the PII and PHI of Plaintiff and the Class would not have been compromised.

113. There is a close causal connection between Defendant's failure to implement security measures to protect the PII and PHI of Plaintiff and the Class and the present harm, or risk of imminent harm, suffered by Plaintiff and the Class. The PII and PHI of Plaintiff and the Class was lost and accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such PII and PHI by adopting, implementing, and maintaining appropriate security measures.

114. Additionally, Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect PII. The FTC publications and orders described above also form part of the basis of Defendant's duty in this regard.

115. Defendant violated Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with applicable industry standards, as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of PII and PHI it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff

and the Class.

116.   Defendant's violation of Section 5 of the FTC Act constitutes negligence *per se*.

117.   Plaintiff and the Class are within the class of persons that the FTC Act was intended to protect.

118.   The harm that occurred as a result of the Data Breach is the type of harm the FTC Act was intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Class.

119.   As a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiff and the Class have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of control over how their PII and PHI is used; (iii) the compromise, publication, and/or theft of their PII and PHI; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII and PHI; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual present and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their PII and PHI, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII and PHI of Plaintiff and the Class; and (viii) costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII and PHI compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and the Class.

120.  As a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiff and the Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

121.  Additionally, as a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiff and the Class have suffered and will suffer the continued risks of exposure of their PII and PHI, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII and PHI in its continued possession.

122.  Plaintiff and Class Members are therefore entitled to damages, including restitution and unjust enrichment, declaratory and injunctive relief, and attorneys' fees, costs, and expenses.

**COUNT II**
**BREACH OF IMPLIED CONTRACT**
**(On Behalf of Plaintiff and the Class)**

123.  Plaintiff and the Class re-allege and incorporate by reference herein all of the foregoing allegations as though fully set forth herein.

124.  Defendant required Plaintiff and the Class to provide their PII, including names, Social Security numbers, dates of birth, and bank account numbers as a condition of their employment. Defendant also retained sensitive PHI for each of the Class Members including but not limited to employee health plan information including enrollment and premiums paid.

125.  As a condition of their employment with Defendant, Plaintiff and the Class provided Defendant with their PII and Defendant retained their PHI. In so doing, Plaintiff and the Class entered into implied contracts with Defendant by

which Defendant agreed to safeguard and protect such information, to keep such information secure and confidential, and to timely and accurately notify Plaintiff and the Class if their data had been breached and compromised or stolen.

126. Plaintiff and the Class fully performed their obligations under the implied contracts with Defendant.

127. Defendant breached the implied contracts it made with Plaintiff and the Class by failing to safeguard and protect their PII and PHI, and by failing to provide timely and accurate notice to them that their PII and PHI was compromised as a result of the Data Breach.

128. As a direct and proximate result of Defendant's above-described breach of implied contract, Plaintiff and the Class have suffered (and will continue to suffer): ongoing, imminent, and impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; loss of the confidentiality of the stolen confidential data; the illegal sale of the compromised data on the dark web; expenses and/or time spent on credit monitoring and identity theft insurance; time spent scrutinizing bank statements, credit card statements, and credit reports; expenses and/or time spent initiating fraud alerts, decreased credit scores and ratings; lost work time; and other economic and non-economic harm.

## COUNT III
### INVASION OF PRIVACY
**(On Behalf of Plaintiff and the Class)**

129. Plaintiff and the Class re-allege and incorporate by reference herein all of the foregoing allegations as though fully set forth herein.

130. Plaintiff and the Class had a legitimate expectation of privacy to their PII and PHI and were entitled to the protection of this information against disclosure to unauthorized third parties.

-34-

131.   Defendant owed a duty to its current and former employees, including Plaintiff and the Class, to keep their PII and PHI confidential.

132.   Defendant failed to protect and released to unknown and unauthorized third parties the PII and PHI of Plaintiff and the Class.

133.   Defendant allowed unauthorized and unknown third parties access to and examination of the PII and PHI of Plaintiff and the Class, by way of Defendant's failure to protect the PII and PHI.

134.   The unauthorized release to, custody of, and examination by unauthorized third parties of the PII and PHI of Plaintiff and the Class is highly offensive to a reasonable person.

135.   The intrusion was into a place or thing which was private and is entitled to be private. Plaintiff and the Class disclosed their PII to Defendant and Defendant retained their PHI as part of the current and former employees' employment with Defendant, but privately with an intention that the PII and PHI would be kept confidential and would be protected from unauthorized disclosure. Plaintiff and the Class were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

136.   The Data Breach at the hands of Defendant constitutes an intentional interference with Plaintiff's and the Class's interest in solitude or seclusion, either as to their persons or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

137.   Defendant acted with a knowing state of mind when it permitted the Data Breach to occur because it was with actual knowledge that its information security practices were inadequate and insufficient.

138.   Because Defendant acted with this knowing state of mind, it had notice and knew the inadequate and insufficient information security practices would cause injury and harm to Plaintiff and the Class.

139.   As a proximate result of the above acts and omissions of Defendant, the PII and PHI of Plaintiff and the Class was disclosed to third parties without authorization, causing Plaintiff and the Class to suffer damages.

140.   Unless and until enjoined, and restrained by order of this Court, Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and the Class in that the PII and PHI maintained by Defendant can be viewed, distributed, and used by unauthorized persons for years to come. Plaintiff and the Class have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiff and the Class.

## COUNT IV
### BREACH OF CONFIDENCE
### (On Behalf of Plaintiff and the Class)

141.   Plaintiff and the Class re-allege and incorporate by reference herein all of the foregoing allegations as though fully set forth herein.

142.   At all times during Plaintiff's and the Class's interactions with Defendant, Defendant was fully aware of the confidential and sensitive nature of Plaintiff's and the Class's PII and PHI that Plaintiff and the Class provided to, and was retained by, Defendant.

143.   As alleged herein and above, Defendant's relationship with Plaintiff and the Class was governed by terms and expectations that Plaintiff's and the Class's PII and PHI would be collected, stored, and protected in confidence, and would not be disclosed to unauthorized third parties.

144.   Plaintiff and the Class provided their PII to Defendant, and Defendant stored their PHI, with the explicit and implicit understanding that Defendant would protect and not permit the PII and PHI to be disseminated to any unauthorized third parties.

145.   Plaintiff and the Class also provided Plaintiff's and the Class's PII to

-36-

Defendant, and entrusted Defendant with their PHI, with the explicit and implicit understanding that Defendant would take precautions to protect that PII and PHI from unauthorized disclosure.

146. Defendant voluntarily received in confidence Plaintiff's and the Class's PII and PHI with the understanding that the PII and PHI would not be disclosed or disseminated to the public or any unauthorized third parties.

147. Due to Defendant's failure to prevent and avoid the Data Breach from occurring, Plaintiff's and the Class's PII and PHI was disclosed and misappropriated to unauthorized third parties beyond Plaintiff's and the Class's confidence, and without their express permission.

148. As a direct and proximate cause of Defendant's actions and/or omissions, Plaintiff and the Class have suffered damages.

149. But for Defendant's disclosure of Plaintiff's and the Class's PII and PHI in violation of the parties' understanding of confidence, their PII and PHI would not have been compromised, stolen, viewed, accessed, and used by unauthorized third parties. Defendant's Data Breach was the direct and legal cause of the theft of Plaintiff's and the Class's PII and PHI as well as the resulting damages.

150. The injury and harm Plaintiff and the Class suffered was the reasonably foreseeable result of Defendant's unauthorized disclosure of Plaintiff's and the Class's PII and PHI. Defendant knew or should have known its methods of accepting and securing Plaintiff's and the Class's PII was inadequate as it relates to, at the very least, securing servers and other equipment containing Plaintiff's and the Class's PII and PHI.

151. As a direct and proximate result of Defendant's breach of its confidence with Plaintiff and the Class, Plaintiff and the Class have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the control over how their PII and PHI is used; (iii) the compromise, publication, and/or theft of

their PII and PHI; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII and PHI; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual present and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their PII and PHI, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII and PHI of current and former employees; and (viii) present and future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII and PHI compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and the Class.

152.    As a direct and proximate result of Defendant's breaches of confidence, Plaintiff and the Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

## COUNT V
## UNJUST ENRICHMENT
### (On Behalf of Plaintiff and the Class)

153.    Plaintiff and the Class re-allege and incorporate by reference herein all of the foregoing allegations as if fully set forth herein.

154.    Defendant benefited from receiving and storing Plaintiff's and Class Members' PII and PHI by its ability to retain and use that information for its own benefit. Defendant understood this benefit.

155.    Defendant also understood and appreciated that Plaintiff's and Class

Members' PII and PHI was private and confidential, and its value depended upon Defendant maintaining the privacy and confidentiality of that PII and PHI.

156. Plaintiff and Class Members conferred a monetary benefit upon Defendant in the form of their employment, and in connection thereto, by providing and entrusting their PII and PHI to Defendant with the understanding that Defendant would pay for the administrative costs of reasonable data privacy and security practices and procedures. Specifically, they were required to provide Defendant with their PII and PHI. In exchange, Plaintiff and Class Members should have received adequate protection and data security for such PII and PHI held by Defendant.

157. Defendant knew Plaintiff and Class Members conferred a benefit which Defendant accepted. Defendant profited from these transactions and used the PII and PHI of Plaintiff and Class Members for business purposes.

158. Defendant failed to provide reasonable security, safeguards, and protections to the PII and PHI of Plaintiff and Class Members.

159. Under the principles of equity and good conscience, Defendant should not be permitted to retain money belonging to Plaintiff and Class Members, because Defendant failed to implement appropriate data management and security measures mandated by industry standards.

160. Defendant wrongfully accepted and retained these benefits to the detriment of Plaintiff and Class Members.

161. Defendant's enrichment at the expense of Plaintiff and Class Members is and was unjust.

162. As a result of Defendant's wrongful conduct, as alleged above, Plaintiff and the Class Members are entitled to restitution and disgorgement of all profits, benefits, and other compensation obtained by Defendant, plus attorneys' fees, costs, and interest thereon.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of herself and Class Members, requests judgment against Defendant and that the Court grant the following:

A.    For an Order certifying the Class, as defined herein, and appointing Plaintiff and her Counsel to represent the Class;

B.    For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of the PII and PHI of Plaintiff and Class Members, and from refusing to issue prompt, complete, any accurate disclosures to Plaintiff and Class Members;

C.    For injunctive relief requested by Plaintiff, including but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class Members, including but not limited to an order:

    i.    prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

    ii.    requiring Defendant to protect, including through encryption, all data collected through the course of its business in accordance with all applicable regulations, industry standards, and federal, state or local laws;

    iii.    requiring Defendant to delete, destroy, and purge the personal identifying information of Plaintiff and Class Members unless Defendant can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and Class Members;

    iv.    requiring Defendant to implement and maintain a comprehensive Information    Security    Program    designed    to    protect    the

confidentiality and integrity of the PII of Plaintiff and Class Members;

v.  prohibiting Defendant from maintaining the PII and PHI of Plaintiff and Class Members on a cloud-based database;

vi.  requiring Defendant to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

vii.  requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring;

viii.  requiring Defendant to audit, test, and train its security personnel regarding any new or modified procedures;

ix.  requiring Defendant to segment data by, among other things, creating firewalls and access controls so that if one area of Defendant's network is compromised, hackers cannot gain access to other portions of Defendant's systems;

x.  requiring Defendant to conduct regular database scanning and securing checks;

xi.  requiring Defendant to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling personal identifying information, as well as protecting the personal identifying information of Plaintiff and Class

Members;

xii.   requiring Defendant to routinely and continually conduct internal training and education, and on an annual basis to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

xiii.   requiring Defendant to implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with Defendant's policies, programs, and systems for protecting personal identifying information;

xiv.   requiring Defendant to implement, maintain, regularly review, and revise as necessary a threat management program designed to appropriately monitor Defendant's information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated;

xv.   requiring Defendant to meaningfully educate all Class Members about the threats that they face as a result of the loss of their confidential PII and PHI to third parties, as well as the steps affected individuals must take to protect themselves; and

xvi.   requiring Defendant to implement logging and monitoring programs sufficient to track traffic to and from Defendant's servers; and for a period of 10 years, appointing a qualified and independent third-party assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate Defendant's compliance with the terms of the Court's final judgment, to provide such report to the Court and to counsel for the class, and to report any deficiencies with compliance

1   of the Court's final judgment;

2   D.   For an award of damages, including actual, statutory, nominal, and

3   consequential damages, as allowed by law in an amount to be

4   determined;

5   E.   For an award of attorneys' fees, costs, and litigation expenses, as

6   allowed by law;

7   F.   For prejudgment interest on all amounts awarded; and

8   G.   Such other and further relief as this Court may deem just and proper.

9   **<u>DEMAND FOR JURY TRIAL</u>**

10  Plaintiff hereby demands that this matter be tried before a jury.

11                          Respectfully Submitted,

12

13  DATED: September 19, 2023      **WOLF HALDENSTEIN ADLER**
                                   **FREEMAN & HERZ LLP**

14

15   */s/ Rachele R. Byrd*
                          RACHELE R. BYRD

16

17  RACHELE R. BYRD (190634)
    *byrd@whafh.com*

18  ALEX J. TRAMONTANO (276666)
    *tramontano@whafh.com*

19  FERDEZA ZEKIRI (335507)
    *zekiri@whafh.com*

20  750 B Street, Suite 1820
    San Diego, CA 92101

21  Telephone: (619) 239-4599
    Facsimile:  (619) 234-4599

22

23  *Attorneys for Plaintiff and the Proposed*
    *Class*

24
    30037
25

26

27

28

-43-